**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN THE MATTER OF THE SEARCH OF** | : | **Case No. _____13-MJ-796_** |
| **INFORMATION ASSOCIATED WITH** | : | |
| **andreflody@yahoo.com** | : | |
| **THAT IS STORED AT PREMISES** | : | |
| **CONTROLLED BY Microsoft Online Services.** | : | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, John Marsh, a Criminal Investigator with the United States Attorney's Office, being

duly sworn, depose and state as follows:

**INTRODUCTION**

I make this affidavit in support of an application for a search warrant for information with

certain accounts that is stored at premises owned, maintained, controlled, or operated by the free

web-based electronic mail service provider Microsoft, Inc. ("Microsoft"), headquartered at 1

Microsoft Way, Redmond, Washington, 98052.  The information to be searched is associated

with the account **andreflody@yahoo.com** as described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft to disclose to the

government records and other information in its possession pertaining to the subscriber or

customer associated with the accounts, including the contents of communications.

1.     Your affiant, John Marsh, has been employed as a Criminal Investigator of the

United States Attorney's Office, since September 2003, and has approximately 25 years law

enforcement experience.  I have experience in vice-related investigations and have participated

in over 2000 arrests.  I have gained expertise in the conduct of computer-based crime investigations through formal training and on-the-job training with more experienced agents.  I have been involved in investigations of violent crime, cyber-crime, including online enticement of minors, and child pornography.  I have gained experience conducting such investigations through training and everyday work related to these investigations.

2.      I am investigating the activities of the Internet account registered to Andre HAMMOND with the email address andreflody@yahoo.com.  As will be shown below, there is probable cause to believe that the records associated with HAMMOND, and the associated email address, contain the instrumentalities, fruits, and evidence of the offenses of production of child pornography, in violation of 18 U.S.C. § 2251; transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); and transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).  I submit this application and affidavit in support of a warrant authorizing a search of the all records associated with or related to that email address and/or HAMMOND, as further described in Attachments A and B.

3.      This Affidavit is based in part on information that I learned from discussions with other law enforcement officers and on my own investigation of this matter.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and

instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, are presently in the possession or control of Microsoft Online Services.

## RELEVANT STATUTES

4.      This investigation concerns allegations of production of child pornography, in violation of 18 U.S.C. § 2251; transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); and transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).

## DEFINITIONS

5.      The following definitions apply to this Affidavit and Attachment B:

a.  "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

b.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

c.  "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that

do not necessarily depict minors in sexually explicit poses or positions.

d.  "Minor" means any person under the age of eighteen years.  <u>See</u> 18 U.S.C. § 2256(1).

e.  "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  <u>See</u> 18 U.S.C. § 2256(2).

f.  "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  <u>See</u> 18 U.S.C. § 1030(e)(1).

g.  "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

4

h.   "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

i.   "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

j.   "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works.  Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

k.   "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the

Internet.  An IP address is expressed as four sets of numbers separated by decimal points and is unique to a particular computer during an online session.

l.  The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); mechanical form (including, but not limited to, phonograph records, printing, typing); or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), Multi Media Cards ("MMCs"), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, Bernoulli drives, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

6.     Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

7.     Computers basically serve five functions in connection with child pornography: production, communication, distribution, storage, and social networking.

8.      With digital cameras, images of child pornography can be transferred directly onto a computer.  A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Through the Internet, electronic contact can be made to literally millions of computers around the world.

9.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.

10.      The Internet affords individuals several different venues for meeting each other, obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

11.      Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

12.      As with most digital technology, communications made from a computer are often saved or stored on that computer.  Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.  Digital information can also be retained unintentionally.  Traces of the path

of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

8

## **COMPUTERS AND COMPUTER-RELATED TECHNOLOGY**

13.     I have received training in computer crime investigations.  I also own a computer and use computers in the course of my work in law enforcement and have personal knowledge regarding the operation of computers.   Based on this training, experience, and information provided to me by other law enforcement personnel involved in this investigation, I know the following:

a.     The Internet is a global network which allows for the sharing of data across computers attached to the network.

b.     Individual users typically access the Internet through a local Internet Service Provider ("ISP") through a modem or other connection device, such as a cable or Digital Subscriber Line ("DSL").  When accessing the Internet, the ISP will assign each user an Internet Protocol ("IP") address, a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet.  IP addresses can also be static, whereby the user's ISP assigns the computer a unique IP address, and that same number is used by the user every time the computer accesses the Internet.

c.     Communication via the Internet can take place through many different mediums; such as accessing a website or sending and receiving electronic mail, also known and referred to herein as "e-mail." E-mail is an electronic form of communication which can contain letter-type correspondence and graphic images.  E-mail is similar to conventional paper type mail in that it is addressed from one individual to another.

d.      E-mail messages usually contain a header that which provides screen name, the identity of the Internet access provider, and the return address on the Internet of the individual who originated the message or graphic.

e.      Another well-known component of the Internet is the World Wide Web, or the "Web."  The Web is a collection of websites located or stored on different computers throughout the world.  Each website is identified by a unique Uniform Resource Locator ("URL"), which identifies the server on which the website information is stored.  Users access websites by typing the corresponding URL into their web browser.

## TECHNICAL BACKGROUND

14.      In my training and experience, I have learned that Microsoft provides a variety of on-line services, including electronic mail ("e-mail") access and "skydrive" access, to the general public.  Subscribers obtain an account by registering with Microsoft.  During the registration process, Microsoft Inc. asks subscribers to provide basic personal information.  Therefore, the computers of Microsoft Inc. are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Microsoft Inc. subscribers) and information concerning subscribers and their use of Microsoft Inc. services, such as account access information, e-mail transaction information, and account application information.

15.      In general, an e-mail that is sent to a Microsoft Inc. subscriber is stored in the subscriber's "mail box" on Microsoft Inc. servers until the subscriber deletes the e-mail.  If the subscriber does not delete the message, the message can remain on Microsoft Inc. servers indefinitely.

16.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Microsoft Inc.'s servers, and then transmitted to its end destination. Microsoft! Inc. often saves a copy of the e-mail sent.  Unless the sender of the e-mail specifically deletes the e-mail from the Microsoft Inc. server, the e-mail can remain on the system indefinitely.

17.     A Microsoft Inc. subscriber can also store files, including e-mails, address books, contact or buddy lists, pictures, and other files, on servers maintained and/or owned by Microsoft Inc.   A Microsoft Inc. subscriber can use other programs and applications Microsoft Chat/Messenger, which allows users to send instant messages to other internet users or store content on the "Skydrive."  This application requests all data associated with the email address andreflody@yahoo.com that is stored on Microsoft servers or the Skydrive/cloud.

18.     Subscribers to Microsoft might not store on their home computers copies of the e-mails stored in their Microsoft Inc. account.  This is particularly true when they access their Microsoft Inc. account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

19.     In general, e-mail providers like Microsoft Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

20.     E-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on

which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Microsoft! Inc.'s website), and other log files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

21.     In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

**PROBABLE CAUSE**

22.     On September 8, 2013, a 14 year-old minor female ("Minor Child 1") disclosed to her mother and subsequently to law enforcement that the defendant had sexually abused her. Minor Child 1's mother and the defendant have been in a romantic relationship for approximately 15 years.  Minor Child 1 specifically disclosed that the defendant touched her vagina with his hands while her clothes were off and that this this touching occurred on multiple occasions when Minor Child 1 was between the ages of 11 and 14.  Minor Child 1 further

disclosed that the defendant used a blue cell phone and a black cell phone to take photographs of Minor Child 1 while she was not wearing any clothes on multiple occasions.

23.     On September 8, 2013, the defendant participated in a non-custodial interview with law enforcement.  The defendant denied taking photographs of Minor Child 1 or fondling Minor Child 1.  The defendant said that he believed that Minor Child 1 was having inappropriate conversations with a male classmate using an internet and phone messaging service.  The defendant reported that approximately one month earlier, he befriended the male classmate online by posing as a female who hated Minor Child 1.  The male classmate told the defendant that he had been exchanging nude photographs with Minor Child 1.  The defendant (still posing as a female) told the male classmate that he would post the nude photographs of Minor Child 1 on a website.  The defendant said that the male classmate sent him nude photographs of Minor Child 1, specifically of her "coochie, titties, and breasts."  In addition, the defendant said that he had taken Minor Child 1's cell phone from her the previous week and found numerous naked photographs of Minor Child 1 on the cell phone.

24.     On September 20, 2013, Minor Child 1 was forensically interviewed.  Among other things, Minor Child 1 disclosed that the defendant touched her on multiple different occasions.  The defendant touched Minor Child 1 on her vagina with his hand and penis, on her cleavage with his hand, and on her butt with his hand and his penis.  All of these contacts were skin-to-skin contacts and most or all of them occurred in Washington, D.C.  Minor Child 1 said that the defendant took pictures of her using two cell phones, a blue one and a black one.  The defendant recorded Minor Child 1 getting undressed.  The defendant also took pictures of Minor Child 1's vagina and cleavage and would tell her how to sit or pose while he took the pictures.

13

On at least one occasion, the defendant told Minor Child 1 to lie down and open her legs.  Minor Child 1 said that she did not tell anyone what the defendant was doing to her because he threatened to post the photographs of her on the internet.

25.     On October 11, 2013, law enforcement obtained a warrant in the Superior Court for the District of Columbia to arrest the defendant on the charge of Second Degree Sexual Abuse with Aggravating Circumstances, in violation of D.C. Code §§ 22-3009 and 3020(a)(5).

26.     On October 15, 2013, law enforcement arrested the defendant in the hallway of a hotel located in Fredericksburg, Virginia.  At the time of his arrest, the defendant was holding a blue HTC T-Mobile Cellular Telephone Bearing Serial No. HT2CFW605370, which was seized incident to his arrest.

27.     Law enforcement went to the defendant's hotel room and located one adult male, one adult (18 year-old) female, and one minor (16 year-old) female ("Minor Child 2").

28.     Minor Child 2 reported to law enforcement that she met the defendant on Facebook.  The defendant and the adult male picked up Minor Child 2 and the adult female in Washington, D.C., on Friday, October 11, 2013.  The defendant drove the adult male, the adult female, and Minor Child 2 to Maryland, where the men spent over $1,000 at a restaurant and entertainment center.  The defendant then drove the adult male, the adult female, and Minor Child 2 to the hotel in Fredericksburg, Virginia.  The defendant engaged in vaginal intercourse with Minor Child 2 multiple times a day between October 11, 2013, and October 15, 2013, and provided Minor Child 2 with alcohol.

29.     Minor Child 2 reported that the defendant had a laptop computer open with the camera pointed at the two queen beds while they were in the hotel room.  At one point, Minor

14

Child 2 saw the defendant reviewing a video on the laptop. Minor Child 2 recognized the hotel room and the defendant in the video but did not see anything else before the defendant moved the laptop so that she could not see it.

30. Law enforcement obtained a warrant to seize items from the hotel, including a Dell laptop computer bearing serial no. 29707642333 (DEVICE). The warrant also authorized the seizure of electronic items located in the defendant's car, which was parked at the hotel, including: Toshiba Hard Drive bearing serial no. 922ST2B7TTV3; and a blue HTC Cellular Telephone with a scratched off serial number.

31. I have examined the Dell laptop computer, and discovered user-created folders linking to a Sky Drive account. Such folders are titled, for example, "camera roll," "documents," "saved pictures," and "mobile uploads." I spoke with Microsoft software engineers at length regarding the nature of cloud storage and the potential methods for unlocking the seized Windows mobile phones in this case. The Microsoft engineers stated among other things that the device passwords will likely be contained in the cloud storage account used to backup these devices. They also stated the existence of the links to the cloud account and the aforementioned folder structure, indicate the devices were backed up to the cloud storage account. Additionally, the Sky Drive log files on the defendant's computer show uploads and downloads from the defendant's HTC Mobile Phone.

## STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS

32. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

a. Title 18, United States Code, Section 2703(b) provides, in part:

15

A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b.      Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection -

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant...

(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c.    The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant.  18 U.S.C. § 2703(c)(1)(A).  No notice to the subscriber or customer is required.  18 U.S.C. § 2703(c)(3).

d.    Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -

(1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and

(2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

e.    Title 18, United States Code, Section 2510, provides, in part:

(8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications; . . .

(17) "electronic storage" means –

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

17

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

33.      I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title, 18 United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft! Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section II of Attachment B.

**CONCLUSION**

34.      Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of Microsoft! Inc. there exists evidence of violations of  Title 18, United States Code, §§ 2251, 2252A, and 2423 relating to material involving the sexual exploitation of minors.  Accordingly, a search warrant is requested.

35.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 United States Code, Section 2711.   18 U.S.C. §§2703(a), 2703(b)(1)(A), and 2703(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."   18 U.S.C. §2711(3)(A)(i).

36.     Pursuant to Title 18, United States Code, Section 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

John Marsh, Criminal Investigator
Office of the United States Attorney for the
District of Columbia

Sworn and subscribed before me this ___th day of ____, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN THE MATTER OF THE SEARCH OF** | **:** | **Case No. _13-MJ-796_____** |
| **INFORMATION ASSOCIATED WITH** | **:** | |
| **andreflody@yahoo.com** | **:** | |
| **THAT IS STORED AT PREMISES** | **:** | |
| **CONTROLLED BY Microsoft Online Services.** | **:** | |

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with **andreflody@yahoo.com** which is stored at premises owned, maintained, controlled, or operated by Microsoft Inc., a company headquartered at 1 Microsoft Way, Redmond, Washington, 98052. This includes any information stored on servers and/or Microsoft Skydrive.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN THE MATTER OF THE SEARCH OF** | **:** | **Case No.  ___13-MJ-796_____** |
| **INFORMATION ASSOCIATED WITH** | **:** | |
| **andreflody@yahoo.com** | **:** | |
| **THAT IS STORED AT PREMISES** | **:** | |
| **CONTROLLED BY Microsoft Online Services.** | **:** | |

**ATTACHMENT B**

**I.      Service of Warrant and Copying of Computer Files by Microsoft**

A.      The officer or agent executing this warrant shall effect service by any lawful method including faxing the warrant (with Microsoft's consent) to Microsoft's offices at the location specified in the warrant.

B.      The officer or agent executing this warrant shall permit Microsoft, as custodian of the computer files described in Section II below, to locate the files, copy them onto removable electronic storage media or print them out as paper copies (or use a different copying method if specified in Section II below), and deliver the copies to the officer or agent, who need not be present during this process at the location specified in the warrant.

C.      Pursuant to 18 U.S.C. § 2703(b)(1)(A), Microsoft and its employees and agents are prohibited from notifying the subscriber(s) of the subject e-mail addresses or accounts or anyone else of the search warrant, application for the search warrant, or any related request.

D.      The United States Attorney's Office and the U.S. Department of Justice shall not be prohibited from sharing information obtained from this warrant with other law enforcement

and intelligence agencies, including foreign governmental agencies, for use in investigations and

prosecutions.

## II.     Files and Account to be Copied and Delivered by Microsoft Employees to the Government

Any and all records, content, and other stored information relating to the Microsoft

account **andreflody@yahoo.com,** including the following:

A.     Any and all e-mails and their content, including any attachments, sent or received by or through the account, whether saved or deleted, whether contained directly in the e-mail account, text, SMS, or instant message account or in a customized "folder";

B.     A complete log file of all activity relating to the account (including dates, times, method of connection, port, dial-up, registration IP address, and/or location);

C.     Any and all records of subscriber account preferences maintained by, or related to, the account(s);

D.     Any and all e-mail addresses listed in the account's buddy list and address book, as well as aliases;

E.     Any and all contents of electronic files that the subscriber has stored in the subscriber's Photos and Briefcase areas;

F.     All records or other information regarding the identification of the accounts described in Attachment A above, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number) provided by the subscriber to Microsoft! Inc.;

G.     All records pertaining to communications between Microsoft Inc. and any person regarding the account, including contacts with support services and records of actions taken.

H.     Any and all information stored on the Skydrive.

22

In addition to material presently in the mailboxes, Microsoft should provide data preserved, at the request of the U.S. Attorney's Office for the District of Columbia and/or the Federal Bureau of Investigation pertaining to the above account.  Copies of the above-described records and stored information should be obtained from original storage and provided on CD-R (CD-Recordable) media.